**EDELSBERG LAW, P.A.**
Scott Edelsberg, State Bar No. 330990
scott@edelsberglaw.com
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: (310) 438-5355

**MILSTEIN JACKSON
FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

(Additional Counsel on Signature Page)

*Attorneys for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BURCHFIELD and JEANNINE BEATY, individually and on behalf of all others similarly situated;<br><br>           Plaintiffs,<br>  vs.<br><br>PRESTIGE CONSUMER HEALTHCARE, INC.,<br><br>         Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>1. Violations of California's False Advertising Laws, Cal. Bus. & Prof. Code §§ 17500, *et seq.*<br><br>2. Violations of California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*<br><br>3. Violations of California's Unfair Competition Laws, 'Unfair' and 'Fraudulent' Prongs; Cal. Bus. & Prof. Code §§ 17200, *et seq.*<br><br>4. Violations of California's Unfair Competition Laws, 'Unlawful' Prong; Cal. Bus. & Prof. Code §§ 17200, *et seq.* |

FIRST AMENDED CLASS ACTION COMPLAINT

5. Violations of Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. §§ 505/1, *et seq.*

6. Violations of Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. §§ 505/2, *et seq.*

Plaintiffs Robert Burchfield and Jeannine Beaty, ("Plaintiffs"), by their undersigned counsel, on behalf of themselves and all persons similarly situated who purchased Little Remedies Infant Fever + Pain Reliever, bring this Class Action Complaint against Defendant Prestige Consumer Healthcare, Inc. ("Prestige" or "Defendant"). Plaintiffs allege the following upon information and belief, except for those allegations that pertain to Plaintiffs, which are based on Plaintiffs' personal knowledge:

## NATURE OF THE ACTION

1. Prestige is an American corporation that touts itself as being "one of the leading consumer healthcare product platforms in North America," with a portfolio that includes popular brands like Dramamine®, Clear Eyes®, Goody's®, and Monistat®, among many others.

2. Prestige's suite of brands provides its main source of revenue for the company. Since at least 2010, the company has concentrated on "becoming a focused over-the-counter (OTC) company"—one that saw nearly $1 billion in revenues last year.

3. In 2004, Prestige acquired the Little Remedies® brand of pediatric products, which included nasal products, digestive health products, and cough and cold remedies. Prestige has tailored its advertising messages to "[t]he Little Remedies mom," who "wants products without any artificial ingredients, flavors or colors. She wants her kids to have only what they need and nothing they don't." This insight sparked the message, "Everything they need. Nothing they don't," that Prestige

brought to a national broadcast audience in 2013. The message is still found on the brand's products today.

4.     Included in the Little Remedies brand portfolio are over-the-counter pain reliever and fever reducers, including Little Remedies Infant Fever + Pain Reliever ("Infants' Product" or the "Product").

5.     Prestige acknowledges that consumer perception of safety affects its sales: "We are dependent on consumers' perception of the safety and quality of our products. . . . For example, some of our products contain the active ingredient acetaminophen, which is a pain reliever and fever reducer. We believe our products are safe and effective when used in accordance with label directions. However, adverse publicity about acetaminophen . . . may discourage consumers from buying our products containing those ingredients, which would have an adverse impact on our sales."

6.     Giving a child too much acetaminophen can be dangerous and even fatal, a problem that terrifies parents and caregivers and causes them to be extra careful when buying medicine for their young children and babies. The FDA warns parents and caregivers to "[b]e very careful when you're giving your infant acetaminophen." Defendant's packaging for its Infants' Product exploits parents' and caregivers' fear of giving their children an improper (and possibly fatal) dosage or formulation. Defendant does this by designing its packaging to mislead a parent into thinking that the Infants' Product is specially-formulated, or otherwise possesses some unique medicinal quality, to make it specifically appropriate for infants as opposed to older children. The front of a box of the Infants' Product contains representations (the product name and depiction of a baby), which are likely to deceive consumers into believing that the Infants' Product is specially formulated for infants or otherwise unique for infants.

7.     In reality, the medicine contained in a bottle of Infants' Product contains the same active ingredient and formulation (*i.e.* 160 mg per 5 mL of acetaminophen)

that is contained in a bottle of Defendant's Children's Fever + Pain Reliever ("Children's Product"). Thus, there is no difference in the medicine sold in the Infants' Product and the Children's Product. But Defendant does not disclose this important information anywhere on the Infants' Product packaging. Accordingly, representing to consumers that the Infants' Products are somehow different or specially formulated so that they—and they alone—should be used in caring for infants deceives reasonable consumers. This material omission causes consumers economic damage because consumers are charged substantially more money for the Infants' Product—almost twice as much per ounce—than for the Children's Product. In other words, the measure of damages (*i.e.* the price premium for the Infant's Product) can easily be calculated because the medicines are identical.

## JURISDICTION AND VENUE

8.      Plaintiffs and all members of the proposed Class are or were citizens of the State of California during all times relevant herein.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and conduct giving rise to the violations of law occurred in this District. This includes the transaction at issue—Plaintiffs' purchase of the Product.

10.      Defendant is a publicly-traded corporation authorized to do business in the State of California, and, at all relevant times hereto, was engaged in the manufacturing, labeling, packaging, marketing and sale of the Product in the State of California.

11.      This action is brought pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (CAFA). Jurisdiction is vested in this Court in that there is minimal diversity and the aggregate amount in controversy exceeds five million dollars ($5,000,000,000.00), exclusive of interest and costs.

12.      Accordingly, this Court has jurisdiction over the parties and the subject matter of this action, and venue is proper.

CLASS ACTION COMPLAINT

**PARTIES**

13.   At all relevant times, Plaintiff Robert Burchfield has resided in Los Angeles County, California. Mr. Burchfield is the parent of a child—E.G.D.B.—who was an infant when he first purchased Infants' Product.

14.   At all relevant times, Plaintiff Jeannine Beaty has resided in Macon County, Illinois. Ms. Beaty is the parent of a child—B.R.B.—who was an infant when she first purchased Infants' Product.

15.   Defendant is, and at all times mentioned in this Complaint was, a publicly traded corporation organized and existing under the laws of the State of Delaware with headquarters at 660 White Plains Road, Tarrytown, New York 10591. Defendant can sue and be sued in this Court.

**FACTUAL ALLEGATIONS**

**Acetaminophen and the Product**

16.   Acetaminophen is an active ingredient in hundreds of over-the-counter (OTC) and prescription medications. It relieves pain and fever.

17.   Acetaminophen is marketed for infants under brand names such as Infants' Tylenol, Pedia Care Fever Reduce Pain Reliever and Triaminic Infants' Syrup Fever Reducer Pain Reliever.

18.   Prior to the acts complained of herein, acetaminophen for infants was only available with a concentration of 80 mg/mL of acetaminophen, and acetaminophen for children was only available with a concentration of 160 mg/5 mL of acetaminophen.

19.   The different concentrations caused some consumers to accidentally provide the wrong dosage of medicine to their children, causing them to overdose.

20.   In 1995, a lawsuit in the San Francisco County Superior Court brought to light a potential for confusion between acetaminophen products marketed for use by infants versus children stemming from the different concentrations.

21.    Between 2000 and 2009 the FDA received reports of twenty (20) children dying from acetaminophen toxicity, and at least three (3) deaths were tied directly to mix-ups involving the two pediatric medicines.

22.    In an industry-wide effort to prevent the ongoing confusion and additional accidental acetaminophen toxicity, in 2011, manufacturers voluntarily changed the liquid acetaminophen marketed for infants from 80 mg per 0.8mL or 80mg per 1mL to be the same concentration as the liquid acetaminophen marketed for children – 160 mg per 5mL.

23.    Since then, the only difference in acetaminophen products marketed for infants and children (including Defendants' Infants' Product and Children's Product) has been the price and the plastic dosing instrument included with the product.

24.    Defendant's Infants' Product and Children's Product have the same concentration of acetaminophen, and are thus interchangeable – equally suitable for infants and children.

25.    Since the formula change in 2011, Defendant has been engaging in the unfair, unlawful, and deceptive practice of manufacturing, marketing and selling the Little Remedies brand pediatric acetaminophen as two separate products (one marketed for use in infants and the other for children), such that parents and caregivers mistakenly believe they must purchase the more expensive Infants' Product for their infants.

26.    Defendant misleads consumers by using deceptive marketing techniques which obscure critical facts from consumers nationwide—most critically, the fact that infants can safely take Children's Products and that the Products are exactly the same.

27.    Defendant deceives consumers into buying the deceptively-labeled Infants' Products for infants, which cost significantly more than the Children's Products, even though both Products are identically-formulated and contain the same amount of acetaminophen in the same dosage amounts.

28.    In the pharmaceutical industry, there are various conventions that are applied in sub-dividing the pediatric population by age. The FDA classification[1] for infants and children is as follows: "infant" means 1 month to 2 years, and "children" means 2 to 12 years.[2] Similarly, Centers for Disease Control and Prevention ("CDC") define "infants" as being "0-1 year of age,"[3] while the American Academy of Pediatrics has a guide titled "Infant Food and Feeding"[4] which identifies infants as being between ages 0 and 12 months.[5] Consumers may reasonably believe that a product that is labeled and marketed for consumption by "infants" is specifically meant to be used by those between the ages of zero months to two years old.

29.    Defendant distributes, markets, and sells the Products in a manner that deceives reasonable consumers into thinking that infants cannot safely take the Children's Products.

30.    The front of the box of the Infants' Product displays a picture of a baby. The outer packaging also includes the following statements, among others:

   a.  "**INFANTS**" (in distinctive red and white lettering) in two separate
       locations

A true and correct copy of the front of the Infants' Product packaging is pictured below:

---

[1] Guidance for Industry – General Considerations for Pediatric Pharmacokinetic Studies for Drugs and Biological products, Draft Guidance, US FDA, 10 November 1998.
[2] http://archives.who.int/eml/expcom/children/Items/PositionPaperAgeGroups.pdf (last visited August 20, 2020)
[3] Child Development – Positive Parenting Tips – Infants (0-1 year) (available at https://www.cdc.gov/ncbddd/childdevelopment/positiveparenting/infants.html) (last visited August 20, 2020).
[4] AAP.org, Infant Food and Feeding (available at https://www.aap.org/en-us/advocacy-and-policy/aap-health-initiatives/HALF-Implementation-Guide/Age-Specific-Content/Pages/Infant-Food-and-Feeding.aspx) (last visited August 20, 2020).
[5] *Id.* at "Infant Timeline" (available at https://www.aap.org/en-us/advocacy-and-policy/aap-health-initiatives/HALF-Implementation-Guide/Age-Specific-Content/Pages/Infant-Timeline.aspx).

CLASS ACTION COMPLAINT



31.    The packaging does not state that this is also the same medicine contained in Children's Product. Instead, the representations and images create the opposite effect. But the lack of difference in formulations between the Infants' Product and Children's Product would be important information to consumers in deciding whether to buy Infants' Product for a number of reasons, including, *inter alia*, the difference in price between Infants' Product and Children's Product.

32.    Similarly, Defendant's Children's Product leads a reasonable consumer to believe that it consists of medicine that is specific to children, as opposed to infants. The packaging displays a picture of an older child and also includes the following statements, among others:

    a.    "**CHILDREN'S**" and is labeled for "AGES 2-11" (in distinctive red and white lettering)

A true and correct copy of the front of the Children's Product packaging is pictured below:



33.   Like the packaging of the Infants' Product, nowhere on the label of the Children's Product does Defendant state that the formulation of the two medicines is entirely identical.

34.   Defendant knows that parents and caregivers, such as Plaintiffs, are particularly cautious about what medicine they give to their infants. Indeed, parenting resources express the conventional understanding that infants should not, and *cannot*, tolerate medicines meant for older children. For example, the popular parenting website "What to Expect" warns **Always use the infant formulations; never give your baby a medication intended for older kids or adults.**[6] This conventional

---

[6] Colleen de Bellefonds, "Children's Medication Safety Tips and Guidelines." What to Expect (Jan. 22, 2019) (available at https://www.whattoexpect.com/family/childrens-health-and-safety/medication-safety-guidelines-tips#:~:text=Always%20use%20the%20infant%20formulations,baby%20in%20a%20sitting%20position.) (emphasis added).

8

understanding holds particularly true for parents when they are giving their infant a medicine that has caused accidental deaths in the past.

35.   While Defendant knows that its Infants' Product is identical to its Children's Product, its deceptive labeling (described above) exploits parents' conventional understanding that parents and caregivers will purchase medicine titled "Infants'" when purchasing medicine for their babies. Defendant's misrepresentations and omissions would be important to a reasonable consumer in deciding whether or not to purchase the Infants' Product.

36.   Defendant's deceptive and misleading advertising, marketing, packaging and business practices harness the fear of acetaminophen toxicity to trick consumers, including Plaintiffs, into purchasing and overpaying for Infants' Product when Children's Product would be just as safe and effective at a fraction of the price.

37.   Consumers are injured by Defendant's deceptions. For example, the Infants' Product retails for $6.87 for two ounces of medicine, while the Children's Product retails for $7.91 for four ounces of medicine.  Accordingly, the Infants' Product costs almost two times as much per ounce than the Children's Product despite being identical. There is a similarly significant price differential throughout the Class Period

**Plaintiffs' Respective Purchases of the Product**

**Plaintiff Burchfield**

38.   When E.G.D.B. was an infant, Mr. Burchfield determined that he was in need of a pain and fever reducer suitable for his baby.

39.   Mr. Burchfield went to the over-the-counter medicine section at, *inter alia*, his local Walmart.

40.   Mr. Burchfield saw that Defendant's Infants' Product was marketed for babies, and, based on the packaging, believed it to be specifically formulated for babies such as E.G.D.B. (and pharmacologically distinct from Defendant's Children's Product or any other children's acetaminophen product).

9

41.   Mr. Burchfield then purchased Infants' Product.

**Plaintiff Beaty**

42.   When B.R.B. was about six months old, in April or May, 2020, she developed a slight fever from teething.

43.   Ms. Beaty went to the over-the-counter medicine section at, *inter alia*, a Walmart retail location.

44.   Ms. Beaty saw that Defendant's Infants' Product was marketed for babies, and, based on the packaging, believed it to be specifically formulated for babies such as B.R.B. (and pharmacologically distinct from Defendant's Children's Product or any other children's acetaminophen product).

45.   Ms. Beaty then purchased Infants' Product.

46.   During both Plaintiffs' interactions with the Infants' Products at the store, Plaintiffs saw and relied upon the Infants' Products packaging and labeling, which was materially similar to the packaging and labeling described and pictured in paragraph 30.

47.   Specifically, both Plaintiffs saw Defendant's Infants' Product and, based on the packaging, believed it to be specifically formulated for—or otherwise to be used exclusively for—infants such as E.G.D.B. and B.R.B. and purchased the Infants' Product from Walmart because of those representations.

48.   Plaintiffs purchased the Infants' Product because, based on the label's representations, they believed that the Infants' Product was specifically formulated for—or otherwise to be used exclusively for—infants based on the marketing and labeling of the Infants' Product. Plaintiffs believed that the Infants' Product was different than the Children's Product. If Plaintiffs knew that the Infants' Product was not specially formulated for—or otherwise to be used exclusively for—infants, they would not have purchased it.

49.   Had Defendant not made the misleading and deceptive representation that the Infants' Products were formulated and designed for "Infants," nor omitted the fact

10
CLASS ACTION COMPLAINT

that the Infants' Products were nothing more than the Children's Products with the word "Infants" prominently displayed on the front label, Plaintiffs would not have overpaid for the Infants' Products, or to purchase the Infants' Product at all. Plaintiffs purchased and paid substantially more for the Infants' Product than they would have if he had known the truth. The Infants' Product that Plaintiffs purchased was worth less than the Infants' Product for which they paid. Plaintiffs were injured in fact and lost money as a result of Defendant's deceptive conduct.

50.    Plaintiffs would like to purchase "Infants" products from Defendant in the future and regularly visit retail locations where such products are sold. If Plaintiffs knew that the Infants' Product's labels were truthful and not misleading, they would purchase the Infants' Product in the future.

51.    At present, however, Plaintiffs cannot purchase the Infants' Product because they remain unsure as to whether the labeling of the Product is, and will be, truthful and non-misleading. If the Infants' Product was in fact different from the Children's Product, or if it were disclosed that the Infants' Product is the same as the Children's Product, Plaintiffs would purchase the Infants' Product in the future.

## **RULE 9(b) ALLEGATIONS**

52.    Defendant made—and continues to make—material misrepresentations and failed—and continues to fail—to adequately disclose that the Infant's Product is simply the Children's Product sold at a higher price. Except as identified herein, Plaintiffs and Class members are unaware, and therefore, unable to identify, the true names and identities of those individuals employed by, or on behalf of, Defendant who are responsible for such material misrepresentations and omissions.

53.    Defendant made—and continues to make—material misrepresentations regarding the Infants' Product. Specifically, at all times relevant to this action, Defendant has labeled, marketed, and sold the Infants' Product in a manner that indicates to reasonable consumers that they are more appropriate for infants than the Children's Product (and indeed should be used to the exclusion of the Children's

Product when caring for infants). These representations are misleading because the Infant's Product is the same as the Children's Product. Defendant then charges an inflated price for the Infant's Product.

54. Defendant's advertising, labeling, and marketing of the Product has contained the material misrepresentations, omissions, and non-disclosures continuously on every package for the Infants' Product throughout the Class Period.

55. Defendant has made numerous misrepresentations in the advertising, labeling, and marketing for the Products that were designed to, and in fact did, mislead Plaintiffs and Class members into purchasing Infants' Products.

56. Defendant made these material misrepresentations, omissions, and non-disclosures for the express purpose of inducing Plaintiffs and other reasonable consumers to purchase or otherwise pay a price premium for Infants' Products based on the mistaken belief that Infants' Products were specifically formulated for infants. Defendant profited by selling Infants' Products to thousands or more of unsuspecting consumers.

## TOLLING

### A.   Discovery Rule Tolling

57. Class Members had no way of knowing about Defendant's deceptive practices with respect to the marketing of its Infants' Product and Children's Product. Defendant's marketing of the respective products makes clear that it tried to hide the true facts, that there is no pharmacological difference between the two products despite the deceptive labeling of its Infants' Product, as described herein.

58. Within the period of any applicable statutes of limitation, Plaintiffs and the other Class Members could not have discovered through the exercise of reasonable diligence that Defendant was hiding its true practices.

59. All applicable statutes of limitation have been tolled by operation of the discovery rule.

**B.      Fraudulent Concealment Tolling**

60.    All applicable statutes of limitation have also been tolled by Defendant's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

61.    Instead of disclosing its true practices, Defendant falsely represented that there was a meaningful difference between its Infants' Product and Children's Product, and that the former should be used by infants, while the latter should be used by children.

**C.      Estoppel**

62.    Defendant was under a continuous duty to disclose to Plaintiffs and other Class Members the true character, quality, and nature of its acetaminophen products, including Infants' Product and Children's Product.

63.    Defendant knowingly, affirmatively, and actively concealed true facts from consumers.

64.    Based on the foregoing, Defendant is estopped from relying on any statutes of limitations in defense of this action.

**<ins>EQUITABLE RELIEF</ins>**

65.    Absent an equitable injunction enjoining Defendant's conduct alleged herein, Plaintiffs, Class members, and the public will be irreparably harmed and denied an effective and complete remedy because they face a real and tangible threat of future harm emanating from Defendant's ongoing conduct which cannot be remedied with monetary damages.

66.    Plaintiffs do not know at this juncture whether the Court will accept a model for legal damages Plaintiffs will proffer in the future at the appropriate time, or whether the Court will find that any such model adequately compensates Plaintiff's and the Class' losses. Accordingly, Plaintiffs set forth alternate claims for legal damages and equitable restitution.

67.    Similarly, as set forth herein, Defendant's material misrepresentations

and omissions—displayed on the packaging of the Infant's Products—are ongoing and accordingly represent an ongoing threat to Plaintiffs, Class members, and members of the general public who have not yet (but who are likely to) come into contact with Defendant's misrepresentations, and who risk becoming injured thereby. Plaintiffs seek, on behalf of themselves, the Class, and the general public, an injunction prohibiting Defendant from the manufacturing, marketing and packaging of the Infant's Products that contain the misrepresentations challenged herein. Specifically, Plaintiffs, seek clear disclosures that there is no pharmacological distinction between "Infant's Product" and "Children's Product" and that the two products can be used interchangeably in a manner that is safe to infants and children alike.

## CLASS ALLEGATIONS

68.   Plaintiffs bring this action as a class action on their own behalf and on behalf of all others similarly situated under Federal Rule of Civil Procedure 23, for declaratory judgment, restitution, injunctive relief, damages, costs and attorneys' fees. Plaintiffs seek certification of this action as a class action on behalf of the following Class and Subclass (the "Classes"):

> **Nationwide Class:**
>
> All persons who purchased the Infants' Product for personal use and not for resale in the United States.
>
> **Illinois Subclass:**
>
> All persons who purchased the Infants' Product for personal use and not for resale in Illinois.

69.   The following persons are excluded from the Classes: Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, or any of them. Also excluded from the proposed Classes are the Court, the Court's immediate family and

Court staff.

70. The members of the Classes are so numerous that joinder of all members is impracticable. On information and belief, there are in excess of a thousand members of the Classes. Discovery will reveal, through Defendant's records, the approximate number of Class members.

71. Plaintiffs' claims are typical of the Classes. Plaintiffs, like all members of the Classes, have been subjected to Defendant's deceptive and misleading marketing (including the packaging) for Infants' Product. The harm suffered by Plaintiffs and the Classes was and is caused by the same misconduct by Defendant.

72. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiffs have retained counsel highly experienced in complex consumer class action litigation and intend to prosecute this action vigorously. Plaintiffs are members of the Nationwide Class described herein, and Plaintiff Beaty is a member of the Illinois Subclass. No Plaintiff has interests antagonistic to, or in conflict with, the other members of the Classes.

73. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant would likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, and/or otherwise escape liability for its wrongdoing.

74. Common questions of law and fact exist as to all members of the Classes, which predominate over any questions that may affect individual Class members. Among the common questions of law and fact are the following:

      a. Whether Defendant's marketing, advertising, labeling, and packaging of Infants' Product is likely to deceive reasonable consumers;

      b. Whether Defendant's marketing, advertising, labeling, and packaging of

Infants' Product caused Plaintiffs and the Class to suffer economic harm;

c. Whether Defendant's representations and omissions are material to reasonable consumers;

d. Whether Defendant violated California Business and Professions Code §§ 17200, *et seq.*;

e. Whether Defendant violated California Business and Professions Code §§ 17500, *et seq.*;

f. Whether Defendant violated California Civil Code §§ 1750, *et seq.*;

g. Whether Defendant violated 815 Ill. Comp. Stat. §§ 505, *et seq.*;

a. Whether Plaintiffs and the Classes are entitled to injunctive relief; and

b. Whether Plaintiffs and the Classes are entitled to damages and/or restitution and if so, the appropriate measure.

75. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

76. The prosecution of separate actions by individual members of the Classes would run the risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for the Defendant. Prosecution as a class action will eliminate the possibility of repetitious litigation.

77. Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendant's actions are generally applicable to the Classes as a whole, and Plaintiffs seek equitable remedies with respect to the Classes as a whole. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole. Moreover, Plaintiffs continue to have use for OTC pain-relief products for children. If the Court were to grant an injunction enjoining Defendant from making the misrepresentations described above, then Plaintiffs would consider purchasing Infants' Product in the future. Without an injunction, Plaintiffs would be unable to trust Defendant's representations and would

16

not purchase Infants' Product.

## FIRST CAUSE OF ACTION
### Violations of California's False Advertising Law (FAL)
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*

### (on behalf of Plaintiffs and the Nationwide Class)

78.     Plaintiffs herby incorporate paragraphs 1-77 as if fully set forth herein.

79.     In marketing, advertising, labeling, and packaging Infants' Product, Defendant made, and continues to make, misleading statements and omissions in order to induce consumers into purchasing Infants' Product on a false premise.

80.     In marketing, advertising, labeling, and packaging Infants' Product, Defendant failed and continues to fail to make material disclosures, including a statement that Infants' Product is the same product as Children's Product.

81.     Defendant is aware that the claims it makes about Infants' Product are deceptive, misleading, without basis, and unreasonable.

82.     Defendant engaged in the deceptive conduct alleged above to induce the public to purchase the Infants' Product instead of Children's Product.

83.     In marketing, advertising, labeling, and packaging Infant's Product described above, Defendant knew or should have known its statements regarding the uses and characteristics of Infants' Product were false and misleading.

84.     Defendant's misrepresentations of the material facts detailed above constitute unfair and fraudulent business practices within Cal. Bus. & Prof. Code § 17200.

85.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

86.     All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a course of conduct repeated on hundreds if not thousands of occasions every day.

87.     Plaintiffs and the Class were misled into purchasing Infants' Product by Defendant's deceptive conduct and misleading advertising as alleged above.

88.     Plaintiffs and the Class were misled and, because the misrepresentations and omissions were uniform and material, they believed that Infants' Products have benefits which they do not; namely that they are uniquely suited or the only safe product for infants.

89.     In addition, Defendant's use of the Product's packaging as advertising and marketing has deceived and is likely to continue deceiving the consuming public, in violation of Cal. Bus. & Prof. Code § 17500.

90.     Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's misrepresentations and omissions. Indeed, Plaintiffs and the Class purchased Infants' Product because of Defendant's misrepresentations that Infants' Product is specially formulated or otherwise uniquely suitable for infants. Defendant's misrepresentations caused consumers to suffer economic damages because Defendant charges consumers substantially more for the Infants' Product—as much as twice as much per ounce—than for its Children's Product. Plaintiffs and the Class would not have purchased the Infant's Product if they had known the truth.

## SECOND CAUSE OF ACTION
### Violations of Consumers Legal Remedies Act (CLRA)
### Cal. Civ. Code §§ 1750, *et seq.*
### (on behalf of Plaintiffs and the Nationwide Class)

91.     Plaintiffs herby incorporate paragraphs 1-77 as if fully set forth herein.

92.     Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and lost money as a result of Defendant's actions as set forth herein.

93.     At all times relevant hereto, Defendant is a "person" as defined in Cal. Civ. Code § 1761(d).

94.     At all times relevant hereto, Defendant's Infants' Product is a "good" as defined in Cal. Civ. Code § 1761(d).

95.     At all relevant times hereto, Plaintiffs' and Class members' purchases of Infants' Product constitute "transactions" as defined in Cal. Civ. Code § 1761(e).

96.     The following subsections of the CLRA prohibit the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction is intended to result or which results in the sale or lease of goods or services to any consumer:

> a. Cal. Civ. Code § 1770(a)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which they do not have;
>
> b. Cal. Civ. Code § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised; and,
>
> c. Cal. Civ. Code § 1770(a)(16): Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

97.     Defendant has violated and continues to violate Cal. Civ. Code §1770(a)(5) by representing that the Infants' Product has sponsorship, approval, characteristics, ingredients, benefits or quantities which they do not have.

98.     Defendant has violated and continues to violate Cal. Civ. Code §1770(a)(9) by advertising the Infants' Product with the intent not to sell it as advertised.

99.     Defendant has violated and continues to violate Cal. Civ. Code §1770(a)(16) by representing the Infants' Product has been supplied in accordance with previous representations when it has not.

100.    Defendant has violated and continues to violate Cal. Civ. Code §§ 1770(a)(5), (a)(9) and (a)(16) by deceiving consumers into believing the Infants' Product is specially formulated or otherwise medicinally unique for infants, as described more fully above. Indeed, Plaintiffs relied on the Infants' Product

19

packaging before purchasing.

101.    Defendant's misrepresentations and omissions were done with the intention of deceiving Plaintiffs and the Class and depriving them of their legal rights and money.

102.    Defendant knew the Infants' Product was not specially formulated or medicinally unique for infants.

103.    Plaintiffs are concurrently filing the declaration of venue required by Cal. Civ. Code § 1780(d).

104.    The policies, acts, and practices hereto described were intended to result in the sale of the Infants' Product to the consuming public, particularly to cautious parents with sick babies who needed medicine, and violated and continue to violate Cal. Civ. Code § 1770(a)(5) of the act by representing that Infants' Product has characteristics, benefits, uses, or quantities which it does not have.

105.    Defendant's actions as described herein were done with conscious disregard of Plaintiffs' rights and the rights of Class members, and Defendant has acted wantonly and maliciously in its concealment of the same.

106.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant continues to make the same misrepresentations and omit material information regarding Infants' Product.

107.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs currently seek restitution and an order enjoining Defendant from engaging in the methods, acts and practices alleged herein, and any other relief deemed proper by the Court.

108.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' misrepresentations and omissions. Indeed, Plaintiffs and the Class purchased Infant's Product because of Defendants' misrepresentations that Infant's Product is specially formulated or otherwise uniquely suitable for infants. Defendants' misrepresentations caused consumers to suffer economic damages

because Defendants charge consumers substantially more for the Infants' Product—as much as twice as much per ounce—than for its Children's Product.

109.    Concurrent with the filing of this Complaint, Plaintiffs sent Defendant notice advising Defendant that it violated and continues to violate, Section 1770 of the CLRA (the "Notice"). The Notice complied in all respects with Section 1782 of the CLRA. Plaintiffs sent the Notice by Certified U.S. Mail, return-receipt requested to Defendant at Defendant's principal place of business. Plaintiffs' Notice advised Defendant that it must correct, repair, replace or otherwise rectify its conduct alleged to be in violation of Section 1770 within 35 days. If Defendant fails to do so, Plaintiffs will amend this Complaint to seek damages.

### THIRD CAUSE OF ACTION
**Violations of Unfair Competition Law (UCL)**
**'Unfair' and 'Fraudulent' Prongs**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(on behalf of Plaintiffs and the Nationwide Class)**

110.    Plaintiffs herby incorporate paragraphs 1-77 as if fully set forth herein.

111.    As alleged above, Plaintiffs have standing to pursue this claim as they have suffered injury in fact and lost money or property as a result of Defendant's actions. Specifically, prior to the filing of this action, Plaintiffs purchased Infants' Product for their own personal household use. In so doing, Plaintiffs relied on Defendant's misrepresentations and omissions of material facts, as alleged in detail above. Had Defendant disclosed on the packaging that Infants' Product and Children's Product are identical, Plaintiffs would not have purchased the more expensive Infants' Product.

112.    Defendant's conduct in marketing, advertising, labeling, and packaging Infants' Product is likely to deceive reasonable consumers. The representations and omissions are likely to lead reasonable consumers to believe that the Infant's Product was specially formulated for infants or has some other medicinal quality for infants. Defendant harnesses parents' and caregivers' fear of inadvertently harming their

21

infants by administering age-inappropriate medicine, which leads parents and caregivers of infants to seek out medication labeled as being for "infants."

113. Defendant is aware that the claims it makes about Infants' Product are deceptive, false and misleading. Defendant is also aware consumers with babies, such as Plaintiffs and members of the Class, are typically more cautious about what medicine to give their baby, especially when they are giving their baby a product that in the past has caused accidental deaths.

114. The misrepresentations by Defendant constitute unfair and fraudulent business practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

115. Defendant's business practices, as alleged herein, are unfair because: (1) the injury to consumers is substantial—they were deceived into thinking Infants' Product was specially formulated or otherwise unique for infants; (2) the injury is not outweighed by countervailing benefits to consumers or competition, as there can be no benefit to consumers where they are required to pay up to more than twice the price for the same medicine; (3) consumers could not reasonably have avoided the injury because Defendant intentionally misled the consuming public by means of its advertising, marketing and labeling of Infants' Product.

116. Defendant's business practices are also unfair because its conduct in selling, advertising, marketing and labeling Infants' offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Such public policy is tethered to specific constitutional and statutory provisions, including California's consumer protection statutes.

117. Defendant's wrongful business practices constitute a continuing course of conduct of unfair competition since Defendant is marketing and selling Infants' Product in a manner likely to deceive the public.

118. Defendant has peddled, and continues to peddle, its misrepresentations through a national advertising campaign.

119. In addition, Defendant's use of the packaging to call attention to or give

CLASS ACTION COMPLAINT

publicity to the sale of goods or merchandise which are not as represented constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

120.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described above.

121.    Plaintiffs and members of the Class were misled into purchasing the Infants' Product by Defendant's deceptive and fraudulent conduct as alleged above.

122.    Plaintiffs and members of the Class were misled and, because the misrepresentations and omissions were uniform and material, presumably believed Infants' Product was specially formulated or unique for infants.

123.    Pursuant to section 17203 of the UCL, Plaintiffs and members of the Class seek an order of this Court enjoining Defendant from engaging in the unfair and fraudulent business practices alleged herein in connection with the sale of Infants' Product.

124.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's misrepresentations and omissions. Indeed, Plaintiffs and the Class purchased Infant's Product because of Defendant's misrepresentations that Infant's Product is specially formulated or otherwise uniquely suitable for infants. Defendant's misrepresentations caused consumers to suffer economic damages because Defendant charges consumers substantially more for the Infants' Product— as much as twice as much per ounce—than for its Children's Product.

125.    Additionally, Plaintiffs seek an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendant by means of the unfair and fraudulent business practices alleged herein.

### FOURTH CAUSE OF ACTION
**Violations of Unfair Competition Law (UCL)**

CLASS ACTION COMPLAINT

**'Unlawful' Prong**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(on behalf of Plaintiffs and the Nationwide Class)**

126.     Plaintiffs herby incorporate paragraphs 1-77 as if fully set forth herein.

127.     Defendant's actions, as alleged herein, constitute illegal and unlawful business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

128.     Defendant is unlawfully labeling, selling, marketing and advertising Infants' Product. Indeed, Defendant's violations of the FAL, CLRA and the UCL, as alleged above, constitute predicate acts, which violate the UCL's "unlawful" prong.

129.     Plaintiffs and members of the Class were misled because Defendant's misrepresentations and omissions, described above, were uniform and material. Plaintiffs reasonably relied on those misrepresentations and material omissions, believing based thereon that Infants' Product was specially formulated or otherwise unique for infants. As a result of Defendant's misrepresentations and omissions, Plaintiffs and members of the Class lost money or property.

130.     Pursuant to section 17203 of the UCL, Plaintiffs seek an order of this Court enjoining Defendant from engaging in the unlawful business practices alleged herein in connection with the sale of Infants' Product.

131.     Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's misrepresentations and omissions. Indeed, Plaintiffs and the Class purchased Infant's Product because of Defendant's misrepresentations that Infant's Product is specially formulated or otherwise uniquely suitable for infants. Defendant's misrepresentations caused consumers to suffer economic damages because Defendant charges consumers substantially more for the Infants' Product—as much as twice as much per ounce—than for its Children's Product.

132.     Additionally, Plaintiffs seek an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendant by means of the unfair and fraudulent business practices alleged herein.

CLASS ACTION COMPLAINT

## FIFTH CAUSE OF ACTION
### Violations of Illinois Consumer Fraud Act
### 815 Ill. Comp. Stat 505/1, *et seq.*
### (on behalf of Plaintiff Beaty and the Illinois Subclass)

133.     Plaintiffs hereby incorporate paragraphs 1-77 as if fully set forth herein.

134.     In Illinois, the Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et. seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act.'"

135.     Plaintiff Beaty and the Illinois Subclass were injured by Defendant's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Illinois Subclass. Because Plaintiff and the Illinois Subclass relied on Defendant's misrepresentations, concealments and omissions when purchasing Infants' Products, they were injured at the time of purchase.

136.     Defendant does business in Illinois, sells and distributes Infants' Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of Infants' Products in Illinois and elsewhere in the United States.

137.     The Infants' Products purchased by Plaintiff Beaty and the Illinois Subclass were "consumer items" as that term is defined under the Illinois Consumer Fraud Act.

138.     Defendant engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat. 505/2 when it misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendant as set forth above concerning its Infants' Products, which has caused damage and injury to Plaintiff

Beaty and the Illinois Subclass at the time of purchase.

139.     Defendant represented, directly or indirectly, that Infants' Products were manufactured, developed, and designed to be used for infants, when it knew that the Children's Products were the same product, yet sold at a significantly lower cost.

140.     In marketing, advertising and labeling Infants' Products, Defendant made, and continues to make, false and misleading statements in order to induce consumers into purchasing Infants' Products on a false premise.

141.     In marketing, advertising and labeling Infants' Products, Defendant failed and continues to fail to make material disclosures, including a disclosure notifying consumers that Infants' Products is the same product as Children's Products.

142.     Defendant is aware that the claims that it makes about Infants' Products are false, misleading, without basis, and unreasonable.

143.     Defendant engaged in the deceptive conduct alleged above in order to induce the public to purchase the more expensive Infants' Products, instead of Children's Products.

144.     In marketing, advertising and labeling Infants' Products described above, Defendant knew or should have known that its representations and statements regarding the uses and characteristics of Infants' Products were false and misleading.

145.     Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described in this Complaint.

146.     All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a course of conduct repeated on hundreds, if not thousands, of occasions every day.

147.     Plaintiff Beaty and the Illinois Subclass were misled and, because the misrepresentations and omissions were uniform and material, presumably believed that Infants' Products has benefits which it does not; namely that it is more suitable and safer for infants than the Children's Products.

148.     Additionally, Defendant's use of various forms of advertising and

marketing have deceived and are likely to continue deceiving the consuming public, in violation of the Illinois Consumer Fraud Act.

149.    Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

150.    Defendant intended Plaintiff Beaty and the Illinois Subclass to rely on their deceptive acts when purchasing Defendant's Infants' Products.

151.    Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff Beaty and the Illinois Subclass at the time of purchase. As a result of Defendant's wrongful conduct, Plaintiff Beaty and the Illinois Subclass have suffered injury in fact and have lost money. Indeed, Plaintiff Beaty and the Illinois Subclass purchased Infants' Products because of Defendant's misrepresentations that Infants' Products are a more suitable and safer OTC medicine for infants than Children's Products.

152.    Plaintiff Beaty and the Illinois Subclass would not have purchased, or would have paid less for, Defendant's Infants' Products but for Defendant's material misrepresentations as described in this Complaint.

## SIXTH CAUSE OF ACTION
### Violations of Illinois Uniform Deceptive Trade Practices Act
### 815 Ill. Comp. Stat. 510/2, *et seq.*
### (on behalf of Plaintiff Beaty and the Illinois Subclass)

153.    Plaintiffs hereby incorporate paragraphs 1-77 as if fully set forth herein.

154.    Plaintiff Beaty brings this cause of action on her own behalf and on behalf of the Illinois Subclass.

155.    The Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/2, *et seq.*, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the

concealment, suppression or omission of such material fact."

156.    815 ILCS 510/2 provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(5) represents that goods or services have . . . uses, benefits or quantities that they do not have . . .; (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

157.    Defendant engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat. 510/2 when it misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendant as set forth above concerning its Infants' Products, which has caused damage and injury to Plaintiff Beaty and the Illinois Subclass. Plaintiff Beaty and the Illinois Subclass were injured by Defendant's unfair and deceptive conduct at the time of purchasing Defendants' Infants' Products.

158.    Defendant represented, directly or indirectly, that Infants' Products were manufactured, developed, and designed to be used for infants, when it knew that the Children's Products were the same product, yet sold at a significantly lower cost.

159.    In marketing, advertising and labeling Infants' Products, Defendant made, and continues to make, false and misleading statements in order to induce consumers into purchasing Infants' Products on a false premise.

160.    In marketing, advertising and labeling Infants' Products, Defendant failed and continues to fail to make material disclosures, including a disclosure notifying consumers that Infants' Products is the same product as Children's Products.

161.    Defendant is aware that the claims that it makes about Infants' Products are false, misleading, without basis, and unreasonable.

162.    Defendant engaged in the deceptive conduct alleged above in order to induce the public to purchase the more expensive Infants' Products, instead of

Children's Products.

163.   In marketing, advertising and labeling Infants' Products described above, Defendant knew or should have known that its representations and statements regarding the uses and characteristics of Infants' Products were false and misleading.

164.   Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described in this Complaint.

165.   All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a course of conduct repeated on hundreds, if not thousands, of occasions every day.

166.   Plaintiff Beaty and the Illinois Subclass were misled and, because the misrepresentations and omissions were uniform and material, presumably believed that Infants' Products has benefits which it does not; namely that it is more suitable and safer for infants than the Children's Products.

167.   Additionally, Defendant's use of various forms of advertising and marketing have deceived and are likely to continue deceiving the consuming public, in violation of the Illinois Consumer Fraud Act.

168.   Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

169.   Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff Beaty and the Illinois Subclass at the point of purchase.

170.   Plaintiff Beaty and the Illinois Subclass would not have purchased, or would have paid less for, Defendant's Infants' Products but for Defendant's material misrepresentations as described in this Complaint. Defendant intended Plaintiff Beaty and the Illinois Subclass to rely on their deceptive acts when purchasing Defendant's Infants' Products.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the members of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A.    An order certifying that the action may be maintained as a Class Action and that Plaintiffs be appointed the Class Representatives and their undersigned counsel as Class Counsel;

B.    Injunctive relief (including but not limited to an order enjoining Defendants from pursuing the policies, acts, and practices complained of herein, and as further specific in paragraphs 65-67, *supra*);

C.    An award of all available damages, in accordance with applicable law;

D.    Pre-judgment interest from the date of filing this suit;

E.    Restitution;

F.    Reasonable attorneys' fees;

G.    Costs of this suit; and,

H.    Such other and further relief as the Court may deem necessary or appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of the Class, by and through their undersigned counsel, hereby request a trial by jury as to all issues so triable.

November 24, 2020                    Respectfully submitted,

*/s/ Scott Edelsberg*
Scott Edelsberg, State Bar No. 330990
scott@edelsberglaw.com
**EDELSBERG LAW, P.A.**
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: (310) 438-5355

**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**

30

Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

**CARNEY BATES & PULLIAM, PLLC**
Hank Bates, California State Bar No. 167688
hbates@cbplaw.com
David Slade (to apply *pro hac vice*)
dslade@cbplaw.com
519 W. 7th Street
Little Rock, Arkansas 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

**PEARSON, SIMON & WARSHAW, LLP**
Melissa S. Weiner (to apply *pro hac vice*)
mweiner@pswlaw.com
Joseph C. Bourne (SBN 308196)
jbourne@pswlaw.com
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

**DAPEER LAW, P.A.**
Rachel Dapeer (to apply *pro hac vice*)
Rachel@dapeer.com
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: (305) 610-5523

**SHAMIS & GENTILE, P.A.**
Andrew Shamis (to apply *pro hac vice*)
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, FL 33132
Telephone: (305) 479-2299

*Counsel for Plaintiffs*