## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BURCHFIELD, et al.,<br>Plaintiffs,<br><br>v.<br><br>PRESTIGE CONSUMER<br>HEALTHCARE, INC.,<br>Defendant. | CV 20-10717 DSF (RAOx)<br><br>Order DENYING Defendant<br>Prestige Consumer Healthcare,<br>Inc.'s Motion to Dismiss (Dkt. 30) |

This case arises out of Defendant Prestige Consumer Healthcare, Inc.'s alleged misrepresentation that an acetaminophen product is specifically formulated for infants. Prestige moves to dismiss Plaintiffs Robert Burchfield and Jeannine Beaty's First Amended Complaint (FAC). Dkt. 30 (Mot.). Plaintiffs oppose. Dkt. 32 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion to dismiss is DENIED.

## I. BACKGROUND

Prestige is a healthcare product platform that focuses on over-the-counter medications. Dkt. 29 (FAC) ¶¶ 1-2. In 2004, Prestige "acquired the Little Remedies® brand of pediatric products, which included nasal products, digestive health products, and cough and cold remedies." Id. ¶ 3. Prestige markets this line to "'[t]he Little Remedies mom,' who 'wants products without any artificial ingredients, flavors or colors. She wants her kids to have only what they need and nothing they don't.'" Id.

The Little Remedies line contains over-the-counter pain reliever and fever reducers, including Little Remedies Infant Fever + Pain Reliever (Infants' Product or the Product).  Id. ¶ 4.  "The Product is sold alongside Infants' Tylenol® and other pediatric acetaminophen products marketed for use by infants."  Id.  Acetaminophen can be dangerous and even fatal to children if they take too much.  Id. ¶ 6.  The Infants' Product contains 160 mg per 5mL of acetaminophen, which is the same amount as the Little Remedies Children's Fever + Pain Reliever (Children's Product).  Id. ¶ 7.  This is the packaging for the Infants' and Children's Products:



Id. ¶¶ 31, 33.

Both Plaintiffs have bought the Infants' Product.  Id. ¶¶ 43, 47.  They claim they "purchased the Infants' Product because, based on the label's representations, they believed that the Infants' Product was specifically formulated for – or otherwise to be used exclusively for –

infants based on the marketing and labeling of the Infants' Product." Id. ¶ 50.  Plaintiffs claim because of the drawing of the infant and the use of the word "INFANTS" in two separate locations on the front of the box, Prestige "mislead[s] a parent into thinking that the Infants' Product is specially-formulated, or otherwise possesses some unique medicinal quality, to make it specifically appropriate for infants as opposed to older children."  Id. ¶¶ 6, 31.

Plaintiffs bring claims for violations of (1) California's False Advertising Law (FAL), Cal. & Prof. Code §§ 17500, et seq.; (2) California's Consumer Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750, et seq.; (3) the unfair and fraudulent prongs of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, et seq.; (4) the unlawful prong of the UCL; (5) Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. Ann. 505/1, et seq.; and (6) Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. Ann. 505/2, et seq.

## II. LEGAL STANDARD

### A.   Rule 12(b)(1) – Lack of Standing

A defendant may raise either a facial or a factual challenge to this Court's jurisdiction on the ground that a plaintiff lacks Article III standing.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial jurisdictional attack, such as the one here, the Court "presume[s] the truthfulness of the plaintiff's allegations" and determines whether the allegations give a plaintiff standing to pursue injunctive relief.  See id. at 1039.

### B.   Rule 12(b)(2) – Lack of Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may seek dismissal of an action due to lack of personal jurisdiction.  Fed. R.

Civ. P. 12(b)(2).  "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction."  In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013), aff'd sub nom. Oneok, Inc. v. Learjet, Inc., 575 U.S. 373 (2015).  "When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995).  "Because there is no statutory method for resolving [personal jurisdiction], the mode of its determination is left to the trial court."  Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).

## C.     Rule 12(b)(6) – Failure to State a Claim

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted.  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (alteration in original) (quoting Twombly, 550 U.S. at 557).  A complaint must "state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . and factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

Prestige claims Plaintiffs' FAC should be dismissed because (1) no reasonable consumer would be deceived by thinking the Infants' Product is specially formulated for babies; (2) Plaintiffs' claims "improperly challenge Prestige's pricing decisions," which are non-justiciable issues; (3) Plaintiffs' claims are preempted by the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301, et seq.; and (4) Plaintiffs' nationwide and Illinois classes fail.  Mot. at 1-3.

## A.    Whether a Reasonable Consumer Would Be Deceived

To state a claim under the CLRA, FAL, or UCL, Plaintiffs must plausibly allege facts showing that the advertisement in question would mislead a reasonable consumer.  Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008).  Because each of these statutes is governed by the "reasonable consumer" test, courts tend to analyze the three statutes together.  See Hadley v. Kellogg Sales Co., 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017); Fitzhenry-Russell v. Coca-Cola Co., No. 5:17-CV-00603-EJD, 2017 WL 4680073, at *3 (N.D. Cal. Oct. 18, 2017). The reasonable consumer standard "requires a probability 'that a significant portion of the general consuming public . . . could be misled.'"  Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (citing Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496 (2003)).

False advertising laws "prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  Williams, 552 F.3d at 938 (internal punctuation omitted) (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002)).  "A

perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under these sections." Day v. AT&T Corp., 63 Cal. App. 4th 325, 332-33 (1998). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss because it] . . . requires 'consideration and weighing of evidence from both sides.'" Williams, 552 F.3d at 938-39 (quoting Linear Tech. Corp. v. Applied Materials, Inc., 152 Cal. App. 4th 115, 134-35 (2007)).

Prestige argues no reasonable consumer could find the label misleading because (1) the front label, back panel, and side panel of the Infants' and Children's Products disclose to the consumer that the medications are "pharmacologically identical," (2) "the fact that the Infant Product contains a cartoon drawing of a child of indeterminate age does not suggest to the reasonable consumer that it is 'specially formulated' or pharmacologically unique to infants," and (3) the use of the word "Infants" on the package is consistent throughout the industry. Mot. at 10-12. Several district courts in California have addressed whether similar pain reliever medications marketed for infants, priced higher than but containing the same acetaminophen concentrations as the medicine marketed for children, had deceptive labels. The parties argue about which cases apply here.

In Elkies v. Johnson & Johnson Servs., CV 17-7320-GW (JEMx), 2018 U.S. Dist. LEXIS 241505, at *13-14 (C.D. Cal. Feb. 22, 2018), the court found it was "plausible, at least for purposes of surviving the pleadings" that "[a] picture of mother-and-baby, along with the word 'Infants,' but without any express disclosure that the medicine in the bottle is exactly the same, and provided at the exact same concentration, as Children's, could lead a significant portion of the general consuming public or of parents of infants and children under two years old, to conclude that Infants' is unique or specially formulated for children under two." The court relied on Ninth Circuit cases such as Williams, 552 F.3d at 938 and Ebner, 838 F.3d at 965, rather than district court decisions such as Boris v. Wal-Mart Stores, Inc., 35 F. Supp. 3d 1163, 1168 (C.D. Cal. 2014), aff'd, 649 F. App'x 424

(9th Cir. 2016), and <u>Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.</u>, No. 2:17-cv-01875-MWF-MRW, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017). <u>Elkies</u>, 2018 U.S. Dist. LEXIS 241505, at *13.

Following similar logic, in <u>Youngblood v. CVS Pharmacy</u>, 2:20-cv-06251-MCS-MRW, 2020 U.S. Dist. LEXIS 222032, at *10 (C.D. Cal. Oct. 15, 2020), the court concluded it could not "find as a matter of law that the Product's packaging 'communicates that the medicine is the same as the medicine in the Children's Product' such that no reasonable consumer would be deceived." While both Products "disclose[d] 'ACETAMINOPHEN 160 mg/5 mL,' they also feature children of different ages and the Product prominently suggests that it is for 'Infants' while instructing consumers to 'Compare to the active ingredients in Infants' Tylenol Oral Suspension.'" <u>Id.</u> at *10-11. Citing <u>Elkies</u>, the court found displaying the acetaminophen concentration on the package or displaying a syringe on the box did not "foreclose[] all reasonable inferences that the medicine is specially made for infants." <u>Id.</u> at *11. "Even if the Product's packaging contains only true statements, a reasonable juror could nevertheless conclude that it is 'has a capacity, likelihood or tendency to deceive or confuse the public.'" <u>Id.</u>, at *11-12 (quoting <u>Williams</u>, 552 F.3d at 938

Like its Central District colleagues, this Court concludes that Plaintiffs have at least plausibly alleged that a reasonable consumer would believe the product was specifically formulated for infants.[1]

## B.    Fraudulent Omissions

In addition to the alleged misrepresentations above, Plaintiffs also assert violations of the FAL, CLRA, and UCL based on an omission theory. <u>See</u> FAC ¶¶ 81, 90, 103, 110, 113, 124, 131, 133. Prestige claims this interpretation fails because "[t]he alleged omission – that

---

[1] As the court in <u>Elkies</u> noted, why else would a reasonable consumer pay 400% more for that product? <u>Elkies</u>, 2018 U.S. Dist. LEXIS 241505, at *12 n.3.

the Infant Product provides the same concentration of acetaminophen as Children's Product – is, in fact, specifically stated on the Infant Product's label.  And, the alleged omission is not contrary to any other representation on the Infant Product's label."  Mot. at 13.  Plaintiffs respond that the omission is not just the acetaminophen concentration, but also "the material fact that the Infants' Product and Children's Product contain identical medication."  Opp'n at 13.

A plaintiff may base a claim on an alleged omission if the omitted fact is "contrary to a representation actually made by the defendant, or an omission of a fact that the defendant was obliged to disclose."  Sud v. Costco Wholesale Corp., 229 F. Supp. 3d 1075, 1085 (N.D. Cal. 2017), aff'd, 731 F. App'x 719 (9th Cir. 2018) (quoting Daugherty v. Am. Honda Motor Co., 144 Cal. App. 4th 824, 835 (2006)).  Under this second theory, there must be a duty to disclose the omitted facts "even in the absence of a particular representation."  Beyer v. Symantec Corp., 333 F. Supp. 3d 966, 978 (N.D. Cal. 2018).  The duty to disclose arises when: (1) the defendant is the plaintiff's fiduciary; (2) the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; and (4) the defendant makes partial representations that are misleading because some other material fact has not been disclosed.  Hodsdon v. Mars, Inc., 891 F.3d 857, 862 (9th Cir. 2018) (citing LiMandri v. Judkins, 52 Cal. App. 4th 326, 336 (1997)).

Again, the Court finds that at this stage Plaintiffs' claims survive.  By representing the Product as an infants' product, without disclosing it was identical to the product for children, a jury could find Prestige made "partial representations that are misleading because some other material fact has not been disclosed."  Hodson, 891 F.3d at 862.[2]  Plaintiffs allege Prestige "was under a continuous duty to disclose to Plaintiffs and other Class Members the true character,

---

[2] The Court also finds the standards in Kearns v. Ford Motor Company, 567 F.3d 1120, 1126 (9th Cir. 2002) have been met.

quality, and nature of its acetaminophen products, including Infants' Product and Children's Product" and it "knowingly, affirmatively, and actively concealed true facts from consumers."  FAC ¶¶ 64, 65. Whether this was misleading given that Prestige disclosed the acetaminophen concentration on both packages is not appropriate for determination at this stage.

## C.   Price Difference

Prestige claims Plaintiffs' claims fail because their "claims come down to a dissatisfaction with the price of the Infant Product" and a "merchant's decision to charge different prices is not justiciable unless there is some other deception."  Mot. at 14 (citing Boris, 35 F. Supp. 3d at 1171-72).  Plaintiffs respond that their allegations are not based on a price difference, but instead that "Plaintiffs reasonably believed the Product to be specially formulated for babies (and pharmacologically distinct from an acetaminophen product marketed for older children)." Opp'n at 13-14.  The price difference between the Infants' Product and Children's Product, Plaintiffs claim, measures the damages of their economic injury based on that deception.  Id. at 14.

In Boris, a putative class action, the plaintiffs challenged two headache-relief products that had the same composition but were branded and priced differently.  The court dismissed the FAL, UCL, and CLRA claims, as well as similar claims under New York and New Jersey consumer-protection statutes, because the products' background was not deceptive and the plaintiffs' challenge to a merchant's pricing decisions was not justiciable.  35 F. Supp. 3d at 1169-70.

Again, the Court agrees with the reasoning in Youngblood: "Unlike in Boris, Plaintiffs here 'are not contending that the price is the source of [defendant's] deception.' . . . Plaintiffs instead point to factors beyond price differential that led them to believe that the Product was specially made for infants and therefore different than the Children's Product: (1) the name 'Infants' Pain + Fever'; (2) the instruction to 'Compare to active ingredients in Infants' Tylenol Oral Suspension'; and (3) the picture of what appears to be a mother holding a young

child relative to the older child featured on the Children's Product." Youngblood, 2020 U.S. Dist. LEXIS 222032, at *9 (citing Boris, 649 F. App'x at 425).

Plaintiffs' claims that the packaging misleads a reasonable consumer to "believe[] the Product is . . . specially formulated for babies," Opp'n at 14, passes muster at the dismissal stage. There is a plausibly alleged deception other than the price difference between the Infants' and Children's Products or Prestige's pricing decisions.

## D.    FDCA

Prestige argues Plaintiffs' claims are both expressly and impliedly preempted by the FDCA.  Mot. at 16-18.

### 1.    Express Preemption

Prestige first argues Plaintiffs' claims are expressly preempted because "the primary form of relief Plaintiff seeks – changes to the marketing and labeling for the Products – would completely invade FDA's authority over labeling and packaging."  Id. at 16-17.  Prestige argues "[t]he FDA promulgated labeling requirements for acetaminophen products that Prestige's products comply with, including the proper age-based dosage, the specific age ranges identified in Infants' and Children's dosing instructions, and a requirement that pediatric acetaminophen state that the product is intended for children or infants."  Id. at 17.

The Supremacy Clause of the United States Constitution empowers Congress to enact legislation that preempts state law.  U.S. Const. art. VI, cl. 2.; Law v. Gen. Motors Corp., 114 F.3d 908, 909 (9th Cir. 1997) ("The Supremacy Clause empowers Congress to supplant decentralized, state-by-state regulation with uniform national rules.").  "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for

state regulation in that field."  <u>Chae v. SLM Corp.</u>, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation marks omitted).

Under 21 U.S.C. § 337(a), the FDCA provides that "all such proceedings for the enforcement, or to restrain violations, of [the Act] shall be by and in the name of the United States."  Courts have generally interpreted this provision to mean that no private right of action exists to redress alleged violations of the FDCA.  <u>See</u> <u>Gile v. Optical Radiation Corp.</u>, 22 F.3d 540, 544 (3d Cir. 1994) (citing <u>Pac. Trading Co. v. Wilson & Co., Inc.</u>, 547 F.2d 367, 370 (7th Cir. 1976)) ("violations of the FDCA do not create private rights of action"), <u>cert. denied</u>, 513 U.S. 965 (1994); <u>Ginochio v. Surgikos, Inc.</u>, 864 F. Supp. 948, 956 (N.D. Cal. 1994) (citing various courts that have held "there is no private cause of action for violation of the Food, Drug, and Cosmetic Act").

Where, as here, "the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent."  <u>CSX Transp., Inc. v. Easterwood</u>, 507 U.S. 658, 664 (1993).  The FDCA only preempts state laws that create a "requirement . . . that is different from or in addition to, or that is otherwise not identical with, a requirement" imposed under federal law.  21 U.S.C. § 379r(a)(2).  States may create "a requirement that is identical" to one under federal law.  <u>Id.</u> § 379r(f)). There is a presumption against a finding of preemption.  <u>See</u> <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 485 (1996) ("In all preemption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'").

The Court is not convinced Congress intended to preempt *all* labeling and packaging regulations relating to acetaminophen products or acetaminophen products for children.  Prestige does not identify which FDA regulations supposedly expressly preempt Prestige's claims.

11

Prestige relies primarily on Summit Technology, Inc. v. High-Line Medical Instruments Co., 922 F. Supp. 299, 305 (C.D. Cal. 1996). Summit Technology addressed claims alleging the failure to disclose that a laser system was not approved by the FDA was false advertising under section 43(a) of the Lanham Act.  Relying on Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1139 (4th Cir. 1993), the court held the claim was preempted because the FDA was actively considering whether the laser systems needed further approval and investigating whether the defendants violated FDA regulations.  Summit Tech., 922 F. Supp. at 306.  Because the "Lanham Act cause of action would thus usurp the FDA's discretionary role in the application and interpretation of its regulations," plaintiff's false advertising claim was preempted.  Id. (internal punctuation omitted) (quoting Fender v. Medtronic, Inc., 887 F. Supp. 1326, 1332 (E.D. Cal. 1995)).  But the situation here does not involve any investigation by the FDA or any potential further FDA approval.

The Court agrees with Plaintiffs, Opp'n at 20, that not all claims premised on misleading packaging and advertisements are preempted. Plaintiffs rely on Fagan v. Neutrogena Corp., No. 5:13-CV-01316-SVW-OP, 2014 WL 92255, at *1 (C.D. Cal. Jan. 8, 2014), which is much more on point.  In that case, the defendant sought to dismiss the plaintiff's claims as preempted by 21 U.S.C. § 379r because plaintiffs "s[ought] to impose ingredient listing requirements that are different from those contained in FDA regulations."  Id.  The court denied the motion to dismiss on these grounds.  Id.  It rejected the argument that plaintiffs were attempting to impose a requirement on cosmetic labeling that was "different from or in addition to FDA regulations" because "[t]his argument assumes the matter that is in dispute in this case, namely, that the verbiage '100% naturally sourced sunscreen ingredients' and the like in defendant's [labeling] is not misleading.  In contrast, if the language in the [labeling] is misleading, as the FAC alleges, then state law liability based on the product labels merely creates a damages remedy for violation of state law requirements that '"parallel," rather than add to, federal requirements,' and hence are not preempted."  Id. (quoting Riegel v. Medtronic, 552 U.S. 312, 330 (2008)).

The same reasoning applies here.  If proved, Plaintiffs' claims "would simply require Defendant to truthfully state [the nature of its product] or not sell its products; such relief would not impose a state requirement that is 'different from or in addition to, or that is otherwise not identical with' that of the FDCA."  Id. (quoting Delarosa v. Boiron, Inc., 818 F. Supp. 2d 1177, 1189-90 (C.D. Cal. 2011) (quoting 21 U.S.C. § 379r(a)(2))); see also Jovel v. Boiron Inc., No. 2:11-CV-10803-SVW-SH, 2013 WL 12164622, at *11 (C.D. Cal. Aug. 16, 2013) ("At bottom, federal law requires the [product's] label to state the chief indications for use in a manner that is not false or misleading.  By comparison, Plaintiff's state law claims mirror this requirement.  If proven, Plaintiff's claims under the UCL and CLRA would simply require Defendants to truthfully state [the product's] efficacy or not sell its products; such relief would not impose a state requirement that is 'different from or in addition to, or that is otherwise not identical with' that of the FDCA." (internal punctuation omitted)).  Plaintiffs' claims are not expressly preempted.

## 2.    Implied Preemption

Prestige also argues the FDA has impliedly preempted the labeling of acetaminophen products.  Mot. at 18.  Implied preemption arises in two circumstances.  First, implied "conflict" preemption exists where there is an "actual conflict" between state and federal law, Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 884 (2000), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Cap. Cities Cable, Inc. v. Crisp, 467 U.S. 691, 698-99 (1984).  Second, implied "field" preemption occurs where federal law "so thoroughly occup[ies] a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it."  Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992).

Prestige cites to no case that holds the "FDA's expansive regulations related to labeling clearly indicate an attempt to occupy the entire field of OTC acetaminophen product labeling regulation," Mot. at 18, and it has not demonstrated Congress has indicated an intent to

preempt *all* labeling regulations.  <u>See</u> <u>Jovel</u>, 2013 WL 12164622, at *12 ("Defendant appears to argue that Plaintiff's claims are susceptible to implied conflict preemption.  The Court disagrees.  Given that Plaintiff's state law claims merely seek to impose requirements that are identical to what federal law already requires, to wit, truthful indications of use on [the product's] label, it is difficult to imagine under these circumstances how the state law conflicts with, or poses an obstacle to, federal law.").  Plaintiffs' claims are not impliedly preempted.

## E.   Class Allegations

Plaintiffs seek to represent two classes: a nationwide class and an Illinois subclass.  FAC ¶ 70.  The classes are defined as follows:

> **Nationwide Class:**
>
> All persons who purchased the Infants' Product for personal use and not for resale in the United States.
>
> **Illinois Subclass:**
>
> All persons who purchased the Infants' Product for personal use and not for resale in Illinois.

<u>Id.</u>  Prestige claims Plaintiffs "lack standing to represent the interests of putative class members that purchased the Infant Product outside California."  Mot. at 19.  Prestige also argues the Court lacks personal jurisdiction over claims by individuals who bought goods outside of California.  <u>Id.</u> at 20.

### 1.   Standing

Prestige first argues Plaintiffs lack standing to represent the nationwide class because the class representatives are residents of California and Illinois and "courts . . . have held that in a putative class action, claims arising under the laws of states in which no named plaintiff resides should be dismissed for lack of standing at the motion to dismiss stage."  Mot. at 19-20 (quoting <u>Snarr v. Cento Fine Foods</u>

<u>Inc.</u>, No. 19-CV-02627-HSG, 2019 WL 7050149, at *8 (N.D. Cal. Dec. 23, 2019)).

Article III of the Constitution limits the jurisdiction of the federal courts to actual "cases" and "controversies." U.S. Const., Art. III, § 2. One element of this case-or-controversy requirement is that the plaintiff must have standing to bring a claim. <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016), <u>as revised</u> (May 24, 2016). To establish Article III standing, a plaintiff must show: (1) she "suffered an injury in fact"; (2) "that is fairly traceable to the challenged conduct of the defendant"; and (3) "that is likely to be redressed by a favorable judicial decision." <u>Id.</u> at 1547 (citations omitted). "[W]hen a plaintiff's lack of standing is 'plain enough from the pleadings,' it can form appropriate grounds for dismissal even if it overlaps with issues regarding whether the named plaintiffs are adequate representatives under Rule 23." <u>Broomfield v. Craft Brew All., Inc.</u>, No. 17-CV-01027-BLF, 2017 WL 3838453, at *14 (N.D. Cal. Sept. 1, 2017) (citing <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 160 (1982)).

The Court finds Plaintiffs have standing and any issues in representing a nationwide class are best addressed at the certification stage. <u>Melendres v. Arpaio</u>, 784 F.3d 1254, 1262 (9th Cir. 2015) ("any issues regarding the relationship between the class representative and the passive class members – such as dissimilarity in injuries suffered – are relevant only to class certification, not to standing."); <u>In re Clorox Consumer Litig.</u>, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) ("Class allegations typically are tested on a motion for class certification, not at the pleading stage."). The named plaintiffs here are citizens of California and Illinois and the lawsuit asserts claims under California and Illinois law. That is sufficient to demonstrate standing at the motion to dismiss stage. <u>Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.</u>, No. 13-CV-01180-BLF, 2014 WL 4774611, at *4 (N.D. Cal. Sept. 22, 2014) ("If a complaint includes multiple claims, at least one named class representative must have Article III standing to raise each claim.") (quoting 5 J. Moore et al., <u>Moore's Federal Practice</u> § 26.63[1][b] at 23-304 (3rd Ed. 2014)).

"If and when Plaintiff moves for class certification, the Court will determine whether dissimilarities between Plaintiff's California law claims and those of non-resident putative class members preclude Plaintiff from asserting the latter in a representative capacity." Robinson v. Unilever U.S., Inc., No. 2:17-cv-03010-DMG-AJW, 2018 WL 6136139, at *4 (C.D. Cal. June 25, 2018) (rejecting the argument that "certain differences between the potentially applicable consumer protection laws of other jurisdictions and of California bar Plaintiff from maintaining a nationwide class" (citing Mazza v. Am. Honda Motor Co., 666 F.3d 581, 596 (9th Cir. 2012))).

## 2. Personal Jurisdiction

Prestige claims the Court lacks personal jurisdiction because:

Specific jurisdiction applies only to claims that arise out of the defendant's contacts purposefully directed at the forum. For instance, this Court has specific jurisdiction over Prestige for claims arising out of California consumers like Robert Burchfield. Not so, however, for the claims asserted by Illinois resident Jeannine Beaty, or those that Burchfield attempts to assert on behalf of unnamed putative class members outside California.

Mot. at 21.

"There are two limitations on a court's power to exercise personal jurisdiction over a nonresident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process." Sher v. Johnson, 911 F.2d 1357, 1360 (9th Cir. 1990); see also In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013) ("Personal jurisdiction over a nonresident defendant is proper if permitted by a state's long-arm statute and if the exercise of that jurisdiction does not violate federal due process."). "Under California's long-arm statute, California state courts may exercise personal jurisdiction 'on any basis not inconsistent with the Constitution of this state or of the United States.'" Daimler AG v. Bauman, 571 U.S. 117, 125 (2014); see also Cal. Civ. Proc. Code Ann. § 410.10. Thus, "the jurisdictional analyses under state law and federal due process are the

same." <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800-801 (9th Cir. 2004)).

Under the Due Process Clause of the Fourteenth Amendment, to exercise personal jurisdiction over an out-of-state defendant, the defendant must have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 923 (2011) (internal quotations omitted) (quoting <u>Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement</u>, 326 U.S. 310, 316 (1945))).  Minimum contacts jurisdiction may be either "general or all-purpose jurisdiction," or "specific or case-linked jurisdiction." <u>Id.</u> at 919 (citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984)).  "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." <u>Ranza v. Nike, Inc.</u>, 793 F.3d 1059, 1069 (9th Cir. 2015) (citing <u>Daimler</u>, 571 U.S. at 137).

Prestige is incorporated and has its principle place of business outside California.  Mot. at 21; FAC ¶ 16.  The remaining question, therefore, is whether the court can exercise specific personal jurisdiction over Prestige for the claims of unnamed putative class members arising out of sales of the Product that occurred outside of California.  Prestige's argument primarily relies on <u>Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County</u>, 137 S. Ct. 1773 (2017).  In <u>Bristol-Myers Squibb</u>, the Supreme Court held California state courts lacked personal jurisdiction over non-resident plaintiffs' product liability claims against a pharmaceutical company that was incorporated in Delaware and headquartered in New York because such claims did not arise out of the company's contacts with the forum.  <u>Id.</u> at 1777-78, 1781-82.

There is a split among district courts about whether <u>Bristol-Myers Squibb</u> applies to class actions, as it involved a mass tort action, <u>id.</u> at 1778.  <u>Compare</u> <u>Pilgrim v. Gen. Motors Co.</u>, 408 F. Supp. 3d 1160, 1167 (C.D. Cal. 2019) ("Plaintiffs also argue that <u>Bristol-Myers</u> does not

apply because this case is a class action, not a mass tort action. The Court disagrees.  Whether an action is brought as a class action has no real effect on whether a defendant can challenge a court's exercise of personal jurisdiction over it.") with King v. Bumble Trading, Inc., No. 18-CV-06868-NC, 2020 WL 663741, at *4 (N.D. Cal. Feb. 11, 2020) (holding Bristol-Myers Squibb did not apply to the class action at hand and stating "[a]lthough the Court agrees that the due process and federalism concerns in Bristol-Meyers are relevant to class actions . . . , there are significant procedural differences between class and mass actions that address those concerns").

The only circuit courts weighing in on this issue are the Seventh Circuit and the D.C. Circuit.  The Seventh Circuit "explicitly refused to extend Bristol-Myers Squibb to class actions and characterized absent class members as non-parties for the purposes of jurisdictional analysis, thereby affirming personal jurisdiction over a nationwide class."  2 Newberg on Class Actions § 6:26 (5th ed.) (citing Mussat v. IQVIA, Inc., 953 F.3d 441, 447 (7th Cir. 2020)).  The D.C. Circuit "avoided explicitly deciding the issue but followed similar logic in concluding that, prior to class certification, absent class members are non-parties for the purposes of jurisdictional analysis."  Id. (citing Molock v. Whole Foods Mkt. Grp., Inc., 952 F.3d 293, 298 (D.C. Cir. 2020)).

This Court finds the majority position, and the position of the Seventh and D.C. Circuits, compelling, and holds that Bristol-Myers Squibb has no impact on class action practice.  See Lacy v. Comcast Cable Commc'ns, LLC, No. 3:19-CV-05007-RBL, 2020 WL 1469621, at *2 (W.D. Wash. Mar. 26, 2020) (declining to apply Bristol-Myers Squibb to class actions because "[t]his Court will not upend the traditional approach to personal jurisdiction in class actions absent an express ruling from the Supreme Court"); Choi v. Kimberly-Clark Worldwide, Inc., No. 8:19-cv-00468-DOC-ADS, 2019 WL 4894120, at *5 (C.D. Cal. Aug. 28, 2019) ("The Court agrees with the line of cases holding Bristol-Myers does not bar nationwide putative class actions where the Court has specific personal jurisdiction over the named plaintiff."); Santos v. CarMax Bus. Servs., LLC, No. 17-CV-02447-RS, 2018 WL 7916823, at

18

\*5 (N.D. Cal. May 8, 2018) ("[I]n the absence of further guidance from the higher courts on this question, <u>Bristol-Myers</u> will not be construed to bar this Court's jurisdiction over CarMax with respect to the non-California putative nationwide class members."). Prestige's argument, therefore, fails.

## IV. CONCLUSION

Prestige's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Date: April 16, 2021

Dale S. Fischer
United States District Judge